UNITED STATES of America, Plaintiff–Appellee,

v.

Clifton Ray OLIVER, Defendant–Appellant.

No. 01–30041.
D.C. No. CR–00–114–WFN.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 6, 2001.

Decided Feb. 6, 2002.

Before REAVLEY,[*] B. FLETCHER, and TALLMAN, Circuit Judges.

### MEMORANDUM[**]

Clifton Ray Oliver pled guilty to one count of traveling with the intent to engage in a sexual act with a juvenile in violation of 18 U.S.C. § 2423(b). Prior to sentencing, Mr. Oliver sought to withdraw his guilty plea. He claimed that, due to ineffective assistance of counsel, he did not understand that, to be guilty, he had to intend to engage in sexual activity with the minor in question when he crossed the border from Washington to Oregon; as a result, Mr. Oliver argued that his guilty plea was involuntary. Relying on facts adduced at the Rule 11 change of plea hearing, the district court determined that Mr. Oliver entered his plea voluntarily and denied his motion to withdraw his guilty plea. We affirm.

### FACTUAL BACKGROUND

In late July, 1999, Clifton Ray Oliver met Jane Doe I, age 15, on the Colville Indian Reservation in Washington. Jane Doe I, who had been drinking with friends, ultimately found herself with Mr. Oliver at the home of Joe Campbell. Mr. Oliver made several sexual advances toward Jane Doe I before she succumbed and had intercourse with him.

Jane Doe I ultimately agreed to accompany Mr. Oliver and another minor, Jane Doe II, to Spokane. There, Mr. Oliver dropped the two girls off in an area known for prostitution. When Jane Doe II provided instruction, Jane Doe I realized she had been enlisted as a prostitute for Mr. Oliver. Later, Mr. Oliver bought Jane Doe I revealing clothes and coached her to approach vehicles as he followed her early forays into Spokane's streets.

After at least two days of prostitution in Washington, Jane Doe I joined Mr. Oliver and Jane Doe II on a drive to Portland, Oregon where Mr. Oliver checked the two girls into a hotel. In addition to performing some 13 acts of prostitution—the proceeds of which she turned over to Mr. Oliver—Jane Doe I engaged in sexual intercourse with Mr. Oliver several times during the group's Portland stay.

On May 23, 2000, a grand jury in the Eastern District of Washington indicted Mr. Oliver for transporting minors Jane

---

[*] The Honorable Thomas M. Reavley, Senior United States Circuit Judge for the Fifth Circuit, sitting by designation.

[**] This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

Doe I and Jane Doe II from Washington to Oregon with the intent that the two girls engage in prostitution in violation of 18 U.S.C. § 2423(a). The grand jury also charged Mr. Oliver with one count of traveling from Washington to Oregon with Jane Doe I "with the intent and for the purpose of engaging in an unlawful sexual act" with her.

Pursuant to a plea agreement, the government agreed to drop the two prostitution charges—each of which carried a maximum 15-year penalty—in exchange for Mr. Oliver's guilty plea to the charge that he traveled across state lines with Jane Doe I with the intent to have sex with her in violation of 18 U.S.C. § 2423(b). As part of the written plea agreement, Mr. Oliver acknowledged that, in order to prove his guilt under 18 U.S.C. § 2423(b) beyond a reasonable doubt at trial, the government would have to prove the following:

(a). First, Defendant traveled in interstate commerce; and

(b). Second, Defendant traveled for the purpose of engaging in sexual intercourse, a sexual act as defined 18 U.S.C. § 2246 with a person under 18 years of age.

Mr. Oliver stipulated with the government that he "crossed the Washington—Oregon border for the purpose of engaging in a in [sic] sexual act."

On August 14, 2000, the district court held a change of plea hearing during which it conducted a colloquy with Mr. Oliver pursuant to Rule 11 of the Federal Rules of Criminal Procedure. After informing Mr. Oliver that he should inquire about anything he did not understand and ascertaining that Mr. Oliver was well-educated, the court inquired about Mr. Oliver's satisfaction with counsel. The defendant reported that he had had enough time to consult with counsel and was satisfied with the advice he had received. Mr. Oliver assured the court that no one had attempted to force or pressure him to plead guilty. The government informed the court that, had Mr. Oliver gone to trial, "the Government would have been required to prove that the defendant had traveled in interstate commerce and that he had traveled for the purpose of engaging in sexual intercourse or any other sexual act as defined by Title 18, United States Code, Section 2246 with a person under 18 years of age."

Before accepting the plea, the court engaged in the following colloquy with Mr. Oliver:

COURT: In August of last year, 1999, were you with Jane Doe, age 15?

MR. OLIVER: Yes.

COURT: Were you with her here in the Eastern District of Washington State up on the reservation?

MR. OLIVER: Yes.

COURT: Did you travel with her from the State of Washington to the Portland, Oregon area?

MR. OLIVER: Yes.

COURT: In the process you crossed the state line from Washington to Oregon?

MR. OLIVER: Yes.

COURT: Was it your purpose—or at least one of your purposes on that trip to engage in sexual activity with this Jane Doe, age 15?

MR. OLIVER: Yes, I knew it was going to happen.

COURT: What?

MR. OLIVER: Yes, I knew it was going to happen.

COURT: You knew that was going to happen?

MR. OLIVER: Yeah.

COURT: And you knew it was going to happen when you went with her across the state line?

MR. OLIVER: Yes.

After a substitution of counsel, Mr. Oliver's new counsel filed a motion to withdraw the guilty plea. At a hearing on the motion, Mr. Oliver argued that he had been confused with respect to the intent the government would be required to prove at a trial; specifically, Mr. Oliver believed the government could not prove that his purpose in crossing the state line was to engage in sexual activity with Jane Doe I. Instead, Mr. Oliver argued he would not have returned from Washington to Oregon had his parole officer not demanded it.

Before denying Mr. Oliver's motion and rendering a sentence, the district court offered several findings on the record to explain its exercise of discretion. The court noted the signed plea agreement, wherein Mr. Oliver agreed that he "crossed Washington/Oregon border for the purpose of engaging in a sexual act." Recounting the Rule 11 colloquy, the court stated, "I am satisfied now, and I was satisfied at the time, that you took a 15 year old female across the state line and it was your—one of your purposes to engage in sexual activity with that young woman aged 15."

## STANDARD OF REVIEW

This court reviews a district court's decision to grant or deny a motion for withdrawal of a guilty plea for an abuse of discretion. *United States v. Nguyen,* 235 F.3d 1179, 1182 (9th Cir.2000). The voluntariness of a guilty plea is subject to de novo review. *United States v. Gaither,* 245 F.3d 1064, 1068 (9th Cir.2001).

A claim of ineffective assistance of counsel is a mixed question of law and fact and is reviewed de novo. *Anderson v. Calderon,* 232 F.3d 1053, 1084 (9th Cir.2000), *cert. denied,* —— U.S. ——, 122 S.Ct. 580, 151 L.Ed.2d 451 (2001). The district court's findings of fact are reviewed for clear error. *Id.* This court may entertain an ineffective assistance of counsel claim on direct appeal "when the record on appeal is sufficiently developed to permit review and determination of the issue." *United States. v. Ross,* 206 F.3d 896, 900 (9th Cir.2000).

## DISCUSSION

Rule 32(e) of the Federal Rules of Criminal Procedure provides that a court may permit a defendant to withdraw a presentence guilty plea upon a showing of "any fair and just reason." Fed.R.Crim.P. 32(e). The decision to permit withdrawal is left to the sound discretion of the district court. *United States v. Alber,* 56 F.3d 1106, 1111 (9th Cir.1995).

Mr. Oliver contends that, as a result of his first attorney's ineffective assistance, he was misled to believe that 18 U.S.C. § 2423(b) imposed a sort of strict liability. Specifically, Mr. Oliver maintains that, at the time he entered his guilty plea, he did not understand that the government had to prove that he intended to have sex with Jane Doe I when he took her across the border from Washington to Oregon.

To prove ineffective assistance of counsel, Mr. Oliver must prove (1) that his first attorney's actions were outside the wide range of professionally competent assistance, and (2) that counsel's action's prejudiced him. *Strickland v. Washington,* 466 U.S. 668, 687–90, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In the context of a guilty plea, *Strickland*'s prejudice prong requires that a defendant show "a reasonable probability that, but for counsel's error, he would not have pleaded guilty and would have insisted on going to trial."

*Hill v. Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).

Mr. Oliver's claims that he received ineffective assistance of counsel and that his plea was involuntary are indistinguishable. *United States v. Rubalcaba,* 811 F.2d 491, 494 (9th Cir.1987). Thus, any claim that he pled guilty involuntarily turns on whether or not Mr. Oliver can demonstrate that his counsel was ineffective under *Strickland*'s two-prong test.

In his affidavit in support of his plea withdrawal, Mr. Oliver claims, "I pled guilty to Count 2 of the Indictment because I had been told by my attorney and believed that I was strictly liable because I was with an under-aged woman, whether or not I knew that, and that my intent was not an issue and did not matter."

Mr. Oliver does not offer persuasive evidence that his attorney did, in fact, tell him that his intent when crossing the border was irrelevant. In his Rule 11 hearing, Mr. Oliver asserted that he was satisfied with the advice he had received from counsel. Mr. Oliver did not allege his counsel misled him until some three months after he entered the guilty plea, at which point Mr. Oliver seemed willing to keep him as counsel provided he filed a motion to withdraw the plea.

More to the point, Mr. Oliver fails to demonstrate that, even if his attorney was ineffective, the ineffectiveness resulted in prejudice. Even if the attorney did not inform him that intent was an element of the crime for which he was charged, at the change of plea hearing Mr. Oliver heard the government's attorney explain that, should the case go to trial, the government would have had to prove that his interstate travel was directed at the purpose of engaging in sexual intercourse with Jane Doe I. His written plea agreement—signed by the prosecutor, Mr. Oliver, and Mr. Oliver's attorney—also clearly states that travel "for the purpose of engaging in sexual intercourse" was an essential element of a § 2423(b) violation. As part of the plea agreement, Mr. Oliver stipulated that "Defendant crossed the Washington—Oregon border for the purpose of engaging in a sexual act." Thus, Mr. Oliver was aware through a variety of sources that his intent was an element of the charged offense.

Mr. Oliver argues that his response to the district court's questions at the change of plea hearing—that he "knew it [sexual intercourse] would happen"—indicates a sense of likelihood rather than purpose. However, the district court did not clearly err in concluding, in light of the abundant evidence of Mr. Oliver's knowledge of the offense elements, that the statements amounted to an intelligent admission to possessing the relevant intent.

Furthermore, apart from his own uncorroborated statement that he would not have pled guilty had he fully understood the intent element of § 2423(b), Mr. Oliver offers no evidence that he would have made the implausible decision to opt to face three counts at trial—each bearing a possible maximum penalty of 15 years—rather than accept a plea for which the government agreed to an adjusted offense level of only 13, which in the worst case would subject Mr. Oliver to 41 months in prison.

Mr. Oliver's counsel was not constitutionally ineffective and the district court did not abuse its discretion when it refused to permit Mr. Oliver to withdraw his guilty plea.

**AFFIRMED.**