NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

JUL 28 2016

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff-Appellee,<br><br>v.<br><br>DEAN GREGORY CHANDLER,<br><br>Defendant-Appellant. | No. 15-50234<br><br>D.C. No.<br>3:12-cr-04031-BEN-1<br><br>MEMORANDUM* |

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff-Appellee,<br><br>v.<br><br>MICHAEL ECCLES,<br><br>Defendant-Appellant. | No. 15-50235<br><br>D.C. No.<br>3:12-cr-04031-BEN-4 |

Appeal from the United States District Court
for the Southern District of California
Roger T. Benitez, District Judge, Presiding

Argued as to 15-50234 and Submitted as to 15-50235 July 6, 2016
Pasadena, California

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Before: FERNANDEZ, CLIFTON, and FRIEDLAND, Circuit Judges.

Dean Chandler and Michael Eccles appeal their convictions for conspiracy, mail fraud, and wire fraud arising out of a loan modification fraud scheme run through the company 1st American Law Center, Inc. ("First American"). Chandler also appeals his 144-month prison sentence. We have jurisdiction under 28 U.S.C. § 1291, and we affirm in both cases.

1. The Government neither violated Federal Rule of Criminal Procedure 16(a)(1)(G) nor committed prosecutorial misconduct in proffering financial testimony through First American's bookkeeper, Patricia Bryant. The Government was not required to provide a written summary of Bryant's testimony under Rule 16(a)(1)(G) because Bryant testified only in a lay capacity. *See United States v. W.R. Grace*, 526 F.3d 499, 510 (9th Cir. 2008) (en banc) (explaining that Rule 16 does not "mandate the disclosure of *nonexpert* witnesses"). The Government's compliance with Rule 16 requirements for its noticed expert witness undermines the premise of Chandler's assertion that the Government tried to circumvent that rule by putting Bryant on the stand instead. Chandler has also failed to show that Bryant's financial gain figures were false—the disparities from other expert calculations could have resulted from differing opinions as to which

2

data to aggregate. *See United States v. Houston*, 648 F.3d 806, 814 (9th Cir. 2001). Even if there were a discovery rule violation or a question about the testimony's accuracy, reversal would be unwarranted because any possible prejudice was cured by the district court's overly corrective decision to strike the testimony for lack of foundation.[1]

2. The district court did not abuse its discretion in declining to order a new trial after it was revealed that a juror had given an incorrect answer about her mortgage default history during voir dire. To obtain retrial, Chandler must show that the juror "failed to answer honestly a material question on *voir dire*" and that "a correct response would have provided a valid basis for a challenge for cause." *McDonough Power Equip. v. Greenwood*, 464 U.S. 548, 556 (1984). The district court did not clearly err in finding that the juror's answer, though mistaken, was honest, given that the juror testified that she believed "default" to mean losing a home rather than being behind on payments and gave her answers in voir dire in accord with that definition. Chandler has also failed to show that the district court

---

[1] Because Bryant had firsthand knowledge of the matters about which she testified, there does not appear to have been any actual lack of foundation. Thus, if anything, the court's rulings on this issue were more favorable to Defendants than they should have been.

erred in finding neither "*actual [n]or implied* bias" on the part of the juror, as would be required to provide a valid basis to challenge her for cause. *United States v. Gonzalez*, 214 F.3d 1109, 1111 (9th Cir. 2000). The juror averred without hesitation that her default experience had no bearing on her decision in the case, and her experience being briefly behind on her mortgage payments is not meaningfully similar to the experiences of the victims of the First American scheme.

3. We reject Chandler's argument that the Government failed to present sufficient evidence to prove that Chandler entered into an agreement to engage in criminal activity and that he had the specific intent to defraud.

The Government presented both direct and circumstantial evidence from which a rational juror could have found that Chandler entered into an agreement to engage in fraud, including: Chandler's meeting with co-conspirators to establish First American, his execution of a written contract governing sharing of First American profits, his role as CEO/President of First American throughout the company's existence, and his receipt of a commission for every client file created. *See United States v. Green*, 592 F.3d 1057, 1067 (9th Cir. 2010).

A rational juror could also have inferred that Chandler specifically intended

4

to defraud from the nature of First American's scheme—which charged substantial and generally non-refunded up-front fees in return for unrequited promises of attorney-backed loan modification services—and from evidence of Chandler's participation in perpetuating and concealing its fraud. *See United States v. Sullivan*, 522 F.3d 967, 974 (9th Cir. 2008) (per curiam) (providing that "intent to defraud may be established by circumstantial evidence," including "misrepresentations made by the defendants" and "the scheme itself" (quoting *United States v. Rogers*, 321 F.3d 1226, 1230 (9th Cir. 2003))). Although Chandler testified that the dishonest scripts used by First American telemarketers were crafted without his knowledge or approval, the jury was entitled to discount this testimony as lacking in credibility.

4. The district court did not undermine Chandler's defense by delaying rulings on his Federal Rule of Criminal Procedure 17(b) subpoena requests and then by denying some of those requests. Chandler has not shown that it was unreasonable for the district court to delay ruling until Chandler provided additional information to support his subpoena requests, and he fails to show that he was in any way prejudiced by the delay. Nor has he shown that the district court abused its discretion in denying some of the Rule 17(b) requests, which

5

sought cumulative or irrelevant testimony. *See United States v. Sims*, 637 F.2d 625, 629 (9th Cir. 1980).

5. Chandler fails to show that any unfair prejudice attendant to testimony about the restitution obligations of one of his co-defendants and the use of the word "victim" at trial outweighed the evidence's probative value so as to warrant exclusion under Federal Rule of Evidence 403. *See United States v. Lloyd*, 807 F.3d 1128, 1152 (9th Cir. 2015) (providing that "[a] district court's Rule 403 determination is subject to great deference" (quoting *United States v. Hinkson*, 585 F.3d 1247, 1267 (9th Cir. 2009) (en banc))). Because Chandler has failed to show individual evidentiary errors, we also deny his request to reverse for cumulative error. *See Mancuso v. Olivarez*, 292 F.3d 939, 957 (9th Cir. 2002), *overruled on other grounds by Slack v. McDaniel*, 529 U.S. 473 (2000).

6. We agree with Chandler that the district court procedurally erred in failing to calculate loss amount as required by U.S.S.G. § 2B1.1(b)(1). "When calculating the Guidelines range for . . . fraud, a district court must determine the amount of loss caused by the fraud," *United States v. Armstead*, 552 F.3d 769, 778 (9th Cir. 2008), and it "must 'provide reasoning to explain its determination of [the] loss,'" *United States v. Stargell*, 738 F.3d 1018, 1024 (9th Cir. 2013) (quoting

6

*United States v. Yeung*, 672 F.3d 594, 604-05 (9th Cir. 2012), *abrogated on other grounds by Robers v. United States*, 134 S. Ct. 1854 (2014)).  The district court did not do so here.  Instead, it imposed a 16-level enhancement without stating the loss amount on which that enhancement was based or explaining its reasoning beyond cursorily rejecting the Government's proposed 20-level enhancement.

We hold, however, that the district court's procedural error does not warrant reversal in this case.  Because Chandler did not object at sentencing to the district court's failure to calculate loss amount, plain error review applies and reversal is only appropriate if Chandler can show a "reasonable probability" that his sentence would have been different absent procedural error.  *United States v. Waknine*, 543 F.3d 546, 554 (9th Cir. 2008).  Chandler has not made this showing.  Pursuant to U.S.S.G. § 1B1.3(a)(B), Chandler is responsible for all reasonably foreseeable losses in furtherance of criminal activity he jointly undertook.  The evidence at trial showed that Chandler was intimately involved in the entire course of First American's activity, and that his knowledge embraced the entire scope of its activity.  Chandler also failed to controvert evidence at trial that First American's total gain was $13 million.  Chandler has not shown that subtracting from this total the fees for the fraction of clients who received either successful loan

7

modifications or refunds would produce a loss amount below the $1 - 2.5 million range corresponding to a 16-level increase. *See* U.S.S.G. § 2B1.1(b)(1)(I) (2014).

We also reject Chandler's other challenges to his sentence. Chandler's argument that the district court procedurally erred in failing to determine the number of victims is waived because he conceded that there were more than 250 victims, making a six-level enhancement appropriate under U.S.S.G. § 2B1.1(b)(2)(C) (2014). *See United States v. Gaither*, 245 F.3d 1064, 1069 (9th Cir. 2001). Chandler's below-Guidelines-range, 144-month sentence is not substantively unreasonable in light of his position at the helm of the First American scheme. And Chandler's argument that the district court's factual findings increased his Guidelines range in violation of the Sixth Amendment is directly foreclosed by this court's decision in *United States v. Hickey*, 580 F.3d 922, 932 (9th Cir. 2009).

7. We deny Eccles's challenge that the Government failed to present sufficient evidence to establish the knowledge and intent elements of his mail and wire fraud convictions.

There was sufficient evidence for a rational juror to have inferred that Eccles "willful[ly] participate[d]" in the First American scheme "with knowledge of its

fraudulent nature." *United States v. Lothian*, 976 F.2d 1257, 1267 (9th Cir. 1992) (alterations in original) (quoting *United States v. Price*, 623 F.2d 587, 591 (9th Cir. 1980), *overruled on other grounds by United States v. De Bright*, 730 F.2d 1255 (9th Cir. 1984) (en banc)). This evidence included testimony by First American's bookkeeper that she twice informed Eccles that the telemarketers he oversaw were misrepresenting First American's history and services. Because Eccles has not shown that this testimony was "facial[ly] incredib[le]," we may not "question the jury's assessment of [this witness's] credibility." *United States v. Tam*, 240 F.3d 797, 806 (9th Cir. 2001). The jury could also have inferred Eccles's knowledge from his managerial position at First American and his work there in multiple capacities from its inception until even after it was raided by the Federal Bureau of Investigations. Evidence that Eccles "personally knew that the venture was operating deceitfully" likewise supports an inference that he had the specific intent to defraud. *Phillips v. United States*, 356 F.2d 297, 303 (9th Cir. 1965).

AFFIRMED.